UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD J. SIMPSON,

        Petitioner,

v.                                          CASE NO. 05-CV-71298-DT
                                            HONORABLE BERNARD A. FRIEDMAN

HUGH WOLFENBARGER,

        Respondent.
_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE HABEAS PETITION

Petitioner Richard J. Simpson has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. Currently pending before the Court is Respondent's motion for summary judgment and dismissal of the habeas petition on the ground that Petitioner did not comply with the statute of limitations. Also pending before the Court are Petitioner's motion to supplement or amend his habeas petition and Petitioner's request for appointment of counsel.

The Court has concluded for reasons given below that Petitioner did not comply with the statute of limitations and that his claims, as set forth in the motion to supplement or amend the petition, lack merit. Therefore, the habeas petition must be dismissed.

### I. Background

On September 6, 2000, Petitioner pleaded no contest in Genesee County Circuit Court to (1) involuntary manslaughter, MICH. COMP. LAWS § 750.321, (2) first-degree fleeing and eluding, MICH. COMP. LAWS § 750.479a(5), and (3) absconding or forfeiting bond, MICH. COMP. LAWS § 750.199a. The convictions arose from an incident in Genesee County on September 24, 1999. Petitioner was on bond pending sentencing in a retail fraud case at the time. He had failed

to appear for sentencing in that case, and he had ceased to participate in a court-ordered residential program. On the day in question, the police began to follow the car that Petitioner was driving. Petitioner sped away instead of stopping when the police activated their lights and sirens. Petitioner was apprehended after he turned into a dead end and tried to escape on foot. Meanwhile, two police cars involved in the chase collided with each other. An officer was killed in the collision.

At the plea proceeding, Petitioner acknowledged his status as a habitual offender, fourth offense. He claimed to understand the plea bargain, the maximum sentence under law, and the rights that he was waiving. He stated that it was his choice to plead no contest and that no one had threatened him or promised him anything beyond the plea bargain to induce him to plead no contest. He claimed that he was pleading no contest freely and voluntarily. He also claimed that he had been afforded an opportunity to discuss his options with his attorneys, that he understood those conversations, and that he had decided to plead no contest because it was in his best interest to do so.

In exchange for Petitioner's plea, the parties and the trial court agreed that the minimum sentence on the manslaughter and fleeing and eluding convictions would be nineteen years. The court and parties further agreed that the sentence on the three counts would run concurrently with each other and concurrently with the sentence of sixteen to twenty-four months imposed in the retail fraud case.[1]

---

[1] The plea and sentencing agreement were made pursuant to *People v. Cobbs*, 443 Mich. 276; 505 N.W.2d 208 (1993), which sets forth the following manner in which judges may participate in sentence discussions:

> At the request of a party, and not on the judge's own initiative, a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.

2

Petitioner subsequently moved to withdraw his plea. The trial court denied his motion, but, at defense counsel's request, Petitioner was evaluated for competency to be sentenced. Petitioner was found to be competent at the time of his plea and competent to be sentenced. On September 26, 2001, the trial court sentenced him to imprisonment for nineteen to forty years on the manslaughter and fleeing and eluding convictions and five to fifteen years on the absconding conviction with 731 days credit on the minimum and maximum sentences. The sentences were ordered to run concurrently with each other and concurrently with Petitioner's sentence for retail fraud.

Petitioner raised one issue in the Michigan Court of Appeals:

The trial court abused its discretion in denying Defendant's presentencing motion to allow him to withdraw his pleas because they were induced by an illusory bargain that pursuant to the plea agreement, he would be allowed to serve all of his sentences concurrently rather than face the possibility of consecutive sentencing had he had (sic) taken his case to trial.

The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. *See People v. Simpson*, No. 243546 (Mich. Ct. App. June 12, 2003).

In a *pro se* application for leave to appeal in the Michigan Supreme Court, Petitioner argued that (1) his no-contest plea was improperly induced by the threat of consecutive

---

To avoid the potential for coercion, a judge must not state or imply alternative sentencing possibilities on the basis of future procedural choices, such as an exercise of the defendant's right to trial by jury or by the court.

The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*Id.*, 443 Mich. at 283; 505 N.W.2d at 212 (footnote omitted) (emphasis in original).

3

sentences, (2) the trial court failed to make a proper determination of his competency to be sentenced, and (3) his no-contest plea to involuntary manslaughter was improperly accepted in that he was actually innocent of that crime. On December 30, 2003, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Simpson*, 469 Mich. 987; 673 N.W.2d 761 (2003) (table).

Petitioner signed his habeas corpus petition on March 31, 2005. The grounds for relief read:

> I. Mr. Simpson's constitutional due process rights were violated where he was not allowed to withdraw his pleas because they were induced by an illusory bargain that pursuant to the plea agreement, he would be allowed to serve all of his sentences concurrently rather than face the possibility of consecutive sentencing had he taken his case to trial.
>
> II. Mr. Simpson's constitutional due process rights were violated where his plea was involuntary and illusory as it was coerced and not made with sufficient awareness of the relevant circumstances and likely consequences due to trial counsel's deficient performance.
>
> > A. Defense counsel failed to explain adequately the nature of the charges and the consequences of the guilty plea as well as his failure to discuss the 'very real possibility' of a manslaughter defense, especially where defense counsel was aware that Mr. Simpson had mental problems and was unable to properly assist in his own defense, he had a low IQ - borderline mental retardation - and he had difficulty in communicating with respect to the underlying events due to his mental disabilities.
>
> III. Mr. Simpson's ability to enter into a voluntary and intelligently made plea agreement was adversely effected by mental and emotional problems, coercion, the overwhelming and unfair pre-trial publicity in his case and by the unfair treatment he received while in the county jail.

Petitioner acknowledges in his pending motion to supplement and amend the habeas

4

petition that not all these issues have been exhausted in state court. He seeks permission to delete his unexhausted claims and to have the Court consider only the following two claims:

> I. Mr. Simpson's constitutional due process rights were violated where he was not allowed to withdraw his pleas because they were induce by an illusory bargain that pursuant to the plea agreement, he would be allowed to serve all of his sentences concurrently rather than face the possibility of consecutive sentencing had he taken his case to trial.
>
> II. Petitioner is unconstitutionally restrained of his liberty where he is actually innocent of the offense underlying his conviction and imprisonment.

Respondent argues that Petitioner's claims are barred from substantive review by the statute of limitations.

## II.  Discussion

### A.  The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year period of limitations for habeas petitions filed by state prisoners.  *See* 28 U.S.C. § 2244(d). The limitations period runs from the latest of

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Because subsections B through D are not applicable here, the statute of limitations began to run when Petitioner's convictions became final. A conviction ordinarily

5

becomes final under § 2244(d)(1)(A), and the statute of limitations begins to run, when "the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court has expired." *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) (citing *Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000)).

The state court proceedings in this case came to a close on December 30, 2003, when the Michigan Supreme Court denied leave to appeal. Petitioner's conviction became final ninety days later on March 29, 2004. The statute of limitations expired one year later on March 29, 2005. The habeas petition was filed on March 31, 2005.[2]

### 1.  Equitable Tolling

Petitioner concedes that his convictions became final on March 29, 2004, and that his habeas petition is untimely. He claims that circumstances beyond his control resulted in the untimely submission of his habeas petition.

The Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations," *Pace v. DiGuglielmo*, __ U.S. __, __, 125 S. Ct. 1807, 1814 n. 8 (2005), but the United States Court of Appeals for the Sixth Circuit has stated that the statute of limitations is not jurisdictional, *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003), and that "equitable tolling does apply to the one-year limitation period applicable to habeas petitions." *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001).

---

[2] The Court deems the habeas petition "filed" on the date that Petitioner signed it and presumably gave it to prison officials for mailing to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (concluding that the prisoner's notice of appeal was "filed" at the time he delivered it to prison officials for forwarding to the court clerk ); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (stating that, "[u]nder the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts"); *see also Marsh v. Soares*, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000) (stating that "[l]iberal application of the mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), causes us to treat the petition as placed in the hands of prison authorities on the same day it was signed").

A petitioner who seeks equitable tolling generally "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 125 S. Ct. at 1814. In this Circuit, courts must consider and balance the factors set out in *Andrews v. Orr,* 851 F.2d 146 (6th Cir. 1988), "unless there is congressional authority to the contrary." *Dunlap*, 250 F.3d at 1009. The *Andrews v. Orr* factors are:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) [the] petitioner's reasonableness in remaining ignorant of the legal requirement for filing the claim. *Id*. at 1008. These factors are not necessarily comprehensive and they are not all relevant in all cases. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis. *Id*.

*Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).

## 2. Application of the *Andrews v. Orr* Factors

Absence of prejudice is not an independent basis for invoking the doctrine of equitable tolling, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984), and Petitioner does not allege that he lacked notice or constructive knowledge of the statute of limitations. He does allege that he thought the deadline for filing his habeas petition was March 30, 2005.

Petitioner's miscalculation of the filing deadline was understandable, because 2004 was a leap year. The extra day in February of 2004 caused the statute of limitations to begin running on March 29, 2004, instead of March 30, 2004. However, neither ignorance of the law, nor miscalculation of the limitations period, is a valid basis for equitable tolling. *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999).

Furthermore, Petitioner has not alleged any facts demonstrating that he was diligent in pursuing his claims after his convictions became final. He apparently did not begin to make the

7

necessary preparations for photocopying and mailing his habeas petition until a few days before the petition was due in federal court. He alleges that he began to encounter difficulties on March 26, 2005, which was a Saturday, when state officials refused to make copies for him, because he had insufficient funds in his prison account. Petitioner's family sent a certified check to cover the cost of the copies. The check was received on March 28, 2005, but the funds did not become available for disbursement until March 31, 2005. Meanwhile, Petitioner sought help from a paralegal because it had became apparent to him that the task was beyond his ability. The photocopies were ready on March 31, 2005. Petitioner mailed his petition to the Court on the same day.

Petitioner correctly points out that correctional officials are obligated to advance funds to a prisoner to pay for copies of exhibits or documents needed for litigation. *See* Mich. Dept. of Corr. Policy Directive 05.03.115 (Dec. 19, 2003), at HH. Petitioner, however, has not explained why he waited until the end of the limitations period to request copies, particularly when state officials are afforded three business days in which to make copies. *See id.* at GG.

"Although administrative obstacles can make complying with deadlines more difficult for prisoners, there is no statutory authority allowing inmates to overcome the one-year limitations period solely because of administrative difficulties." *Freeman v. Page*, No. 97 C 4705, 1998 WL 171822 (N.D. Ill. Apr. 10, 1998) (unpublished opinion quoted in *United States v. Gilmore*, 26 F. Supp.2d 1035, 1039 (N.D. Ill. 1998)). Delays in photocopying materials do not constitute "extraordinary circumstances." *See Hood v. Galaza*, 47 F. Supp.2d 1144, 1148 (S.D. Ca. 1999). "Difficulty obtaining records and lack of money to pay for copies are common problems among inmates who are trying to pursue post-conviction habeas relief and, thus, do not present exceptional circumstances that warrant equitable tolling." *Kiser v. Dretke*, No. 4:04-CV-0494, 2004 WL 2331592, at *2 (N.D. Tex. Oct. 15, 2004), *report and recommendation adopted by*

*Kiser v. Dretke*, No. CIV. A. 404CV494Y, 2004 WL 2549174 (N.D. Tex. Nov. 9, 2004).

Petitioner could have submitted his habeas petition without duplicate copies and without the attachments. At a minimum, the Clerk of Court would have time-stamped the petition "received," and given Petitioner an opportunity to cure any deficiencies. The Court therefore concludes that the failure of state officials to make photocopies for Petitioner more promptly was not an extraordinary circumstance justifying equitable tolling.

### 3. Actual Innocence

"[C]onstitutional concerns counsel in favor of upholding equitable tolling based on a credible claim of actual innocence." *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005). "*Souter* requires the petitioner to prove that new reliable evidence establishes his innocence by a more-likely-than-not standard." *Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005).

Although Petitioner alleges that he is innocent of the crimes for which he was convicted, state district and circuit court judges found the facts to be sufficient to support Petitioner's convictions. (Tr. Jan. 20, 2000, at 314-32; Tr. Sept. 6, 2000, at 21-32, 40.) Petitioner has not submitted any new evidence demonstrating that he is actually innocent. Thus, Petitioner's claim of actual innocence does not toll the statute of limitations.

### 4. Intellectual Functioning

Petitioner alleges that he is mentally retarded and suffers from attention deficit disorder and obsessive compulsive disorder. "[T]here is no absolute rule that would require tolling whenever there is mental disability." *Lopez v. Citibank, N.A.*, 808 F.2d 905, 906 (1st Cir. 1987). A long line of federal cases counsel against an absolute rule of tolling on insanity grounds and argue in favor of a case-specific analysis. *Id*. at 907. Mental illness is a basis for equitable tolling of a statute of limitations only in extreme circumstances. *Arizmendi v. Lawson*, 914 F. Supp. 1157, 1162 (E.D. Pa. 1996).

Petitioner's exhibits support the contention that he suffers from borderline intellectual functioning and that he experiences great difficulty in attending to tasks at hand. Despite these difficulties, Petitioner alleges that he prepared his own habeas petition and that he did not seek help until state officials frustrated his attempts to meet the Court's filing deadline. Petitioner filed a coherent and orderly habeas petition with a brief consisting of forty-eight typewritten pages and multiple exhibits. He also filed a motion to supplement and amend his habeas petition, an answer to Respondent's motion with multiple exhibits, and a letter addressed to the Clerk of Court. A comprehensive psychiatric assessment dated October 1, 2001, revealed normal intellectual functioning and no thought disorder.

The Court does not believe that Petitioner's mental difficulties were so disabling as to prevent him from filing a timely habeas petition. The alleged problems were not "of a sort that makes it equitable to toll the statute . . . ." *Lopez*, 808 F.2d at 907.

The Court concludes that Petitioner is not entitled to equitable tolling of the statute of limitations. Therefore, his habeas petition is time-barred.

### B.  The Substantive Merits of Petitioner's Claims

Even assuming that the habeas petition is not time-barred, the two claims set forth in Petitioner's motion to supplement and amend his habeas petition have no substantive merit. The reasons follow.

#### 1.  The Value of the Plea Bargain

The first habeas claim alleges that Petitioner's no-contest plea was involuntary and unintelligent because the plea bargain was illusory. Petitioner alleges that his sentences could not have run consecutively and, therefore, the agreement to sentence him to concurrent terms of imprisonment was no bargain.

A guilty or no-contest plea must be a voluntary, knowing, and intelligent act "done with

10

sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).  The standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  "That is so because a guilty plea constitutes a waiver of three constitutional rights:   the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley*, 506 U.S. 20, 29 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).  Courts look to all the relevant circumstances when determining whether a plea was entered voluntarily. *Brady*, 397 U.S. at 749.

State sentences in Michigan run concurrently unless there is statutory authority for the imposition of consecutive sentences. *People v. Chambers*, 430 Mich. 217, 222; 421 N.W.2d 903, 905 (1988).  Petitioner concedes that his sentences could have run consecutively with his sentence for retail fraud. *See* MICH. COMP. LAWS § 768.7b(2)(a).

In addition, the plea bargain provided for a minimum sentence of no more than nineteen years.  Had Petitioner gone to trial and been convicted of manslaughter or first-degree fleeing and eluding, he could have been sentenced as a four-time habitual offender to life imprisonment. *See* MICH. COMP. LAWS § 769.12(1)(a).  This fact was explained to Petitioner at the plea.  (Tr. Sept. 6, 2000, at 8-9.)

Federal decisions also support the conclusion that Petitioner's plea was valid.  The Supreme Court has declined to hold "that a guilty plea is compelled and invalid . . . whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751.

In *Warren v. Lewis*, 365 F.3d 529 (6th Cir. 2004), the habeas petitioner argued that his guilty plea was not knowing or voluntary because he pleaded guilty due to fear that he might

11

otherwise receive the death penalty. The petitioner claimed that his fear was groundless because his mental retardation made him ineligible for the death penalty. The Sixth Circuit rejected that argument after finding that the advice offered by Warren's attorney (that the facts militated against a finding of mental retardation and that Warren risked imposition of the death penalty if he went to trial) was reasonable. The Sixth Circuit concluded that Warren had failed to demonstrate that his guilty plea was unknowing and involuntary. *See id*. at 534.

In *McAdoo v. Elo*, 365 F.3d 487 (6th Cir.), *cert. denied*, 543 U.S. 89 (2004), the petitioner pleaded guilty to one count of second-degree murder and two counts of assault with intent to commit murder. He had been charged with one count of first-degree murder, which carries a sentence of life imprisonment without the possibility of parole, and two counts of assault with intent to commit murder. His plea bargain called for a sentence of three concurrent life sentences. He argued that his plea was illusory and that he obtained no real benefit from pleading guilty because the Michigan Parole Board seldom grants release on parole for second-degree murder. The Sixth Circuit held "that McAdoo derived a benefit by avoiding a trial on the first-degree murder charge which was punishable by life without parole and receiving instead a sentence of life with the possibility of parole. As such, his plea was not illusory." *Id*. at 498.

Petitioner likewise received a benefit from pleading no contest. He avoided the possibility of serving a life sentence after completing his retail fraud sentence. The Court therefore concludes that Petitioner's plea was voluntary and knowing and not illusory. The state appellate court's opinion that Petitioner's claim lacked merit was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

### 2. Actual Innocence

Petitioner's second and final claim is that he is actually innocent of the convictions for

which he was found guilty. Claims of actual innocence are not "a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* Furthermore, at the preliminary examination, the prosecutor produced evidence from which a jury could have concluded that Petitioner absconded on bond, fled and eluded the police, and set in motion a chain of events that led to an officer's death. Petitioner has not provided any new and credible evidence of actual evidence. Therefore, his claim of actual innocence does not entitle him to habeas relief.

### III. Conclusion

Petitioner's claims are time-barred and without merit. Accordingly, Respondent's motion for summary judgment and dismissal [Doc. #10, Oct. 17, 2005] is GRANTED, and the application for the writ of habeas corpus [Doc. #1, Apr. 4, 2005] is DISMISSED. Petitioner's motion to amend or supplement the habeas petition [Doc. #7, Sept. 26, 2005] is GRANTED, but his request for appointment of counsel [Doc. #8, Sept. 26, 2005] is DENIED.

_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: _____

13